CONSENT TO ADOPTION OF A MINOR.

Suffolk.    March 7, 1963. — April 3, 1963.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Adoption.*

The grounds for a determination in a proceeding under G. L. c. 210, § 3A, that the consent of a parent to adoption of his child "is not required" are the same as those set forth in § 3.   [706–708]

A finding in a proceeding under G. L. c. 210, § 3A, merely that a parent was "wholly unsuitable to have custody of" his child did not justify a decree that the consent of and notice to the parent would not be required upon a subsequent petition for adoption of the child.   [706–707]

PETITION filed in the Probate Court for the county of Suffolk on June 7, 1961.

The case was heard by *Wilson, J.*

*Victor G. Fields* for the respondent.

*John J. Sullivan, Jr.,* for the petitioner.

WHITTEMORE, J. This is an appeal by the respondent from a decree of the Probate Court for Suffolk County entered May 4, 1962, on a petition of the director of the Division of Child Guardianship of the Department of Public Welfare filed June 7, 1961. The decree ruled that "the consent of and notice to . . . [the respondent] is not required upon a petition for adoption of . . . [his minor child] . . . [subsequently] sponsored by the Department of Public Welfare."

A report of material facts concludes that "the child's father . . . is wholly unsuitable to have custody of this child, and that adoption will be for the little boy's best interest. Accordingly, . . . [the] Court decreed that . . . consent . . . and notice . . . is not required."

The consent of lawful parents to a decree for adoption of a child is required by G. L. c. 210, § 2. Section 3 specifies that consent of a person named in § 2 shall not be required

in specified instances.[1]  Unsuitability to have custody of the child is not a specified ground.  Recognizing this, the appellee relies on § 3A, contending, in effect, that that section has empowered the Probate Court to determine, on any reasonably relevant ground, that consent is not required. We think it clear that § 3A has not done this.  That section makes possible a determination, in advance of a petition for adoption, that certain consents will not be required when and if such a petition is filed, and it thereby facilitates adoption proceedings.  In terms it permits the Department of Public Welfare or any charitable corporation therein described to institute a proceeding, like the one before us, "independent of a petition for adoption . . . to establish whether . . . the consent of any person named in the previous two sections[2] shall be required to any subsequent petition for adoption of a child in the care or custody of such department or incorporated charitable agency."  The section concludes: "If the court finds that such consent is not required, notice to such person under the following section [4] shall not be required on any petition for adoption of such child subsequently sponsored by the department or said . . . agency, nor shall the consent of such person to such petition be required."

Section 3A neither states nor implies any grounds other than those specified in § 3 for finding that "consent is not required."  The reference to "the consent of any person named in the previous two sections" indicates the intention to look thereto for the standards for the determination un-

---

[1] ". . . if such person is adjudged . . . hopelessly insane, or is imprisoned . . . under sentence for a term of which more than three years remain unexpired at the date of the petition; or if he has wilfully deserted or neglected to provide proper care and maintenance for such child for one year last preceding the date of the petition . . .; or if he has suffered such child to be supported for more than one year continuously prior to the petition by an incorporated charitable institution or by a town or by the commonwealth; or if he has been sentenced to imprisonment for drunkenness upon a third conviction within one year and neglects to provide proper care and maintenance for such child; or if such person has been convicted of being a common night walker or a lewd, wanton and lascivious person, and neglects to provide proper care and maintenance for such child."

[2] The reference is to §§ 2 and 3, and not to § 2A which was enacted by St. 1954, c. 649, § 1.  Section 3A was enacted by St. 1953, c. 593, § 1.

der § 3A. Section 3A contains no words appropriate to
vest in the probate judge discretion to modify or supple-
ment the express requirements of §§ 2 and 3.[3]

The report shows nonsupport of the child by the respond-
ent for at least eight months prior to the date of the decree
but makes no finding as to nonsupport in the year prior to
the filing of the petition. It states facts which tend to sup-
port the conclusion of unfitness to have custody,[4] but the
findings do not show conduct or status of the respondent
such as, by § 3, to make inapplicable the requirement of con-
sent imposed by § 2, and of notice imposed by § 4.

It may be that on further hearing, on this or a new peti-
tion, the necessary findings under § 3 can be made. The
decree is reversed and the cause remanded. If a new peti-
tion is filed, the petition herein is to be dismissed without
prejudice. Otherwise the case is to stand for further pro-
ceedings in accordance herewith.

*So ordered.*

---

[3] General Laws c. 119, § 23C, as amended by St. 1960, c. 325, to which the
department refers, does not enlarge the scope of § 3A. It provides: "The
department may seek and may accept on order of a probate court the custody
of any child under twenty-one years who is without proper guardianship due
to the death, unavailability or incapacity of the parent or guardian, or on the
consent of the parent or parents. Such custody shall include the right to
determine the child's place of abode, medical care, education; to control visits
to the child; to give consents to enlistments, marriages and other contracts re-
quiring parental consent, such custody to include the right to consent to adop-
tion only when it is expressly included in the order of the court." There has
been no order under this section which would cause the department to be
"substituted for" the parents as the person to give consent under G. L. c. 210,
§ 2, and we note that "unfitness" is not among the grounds specified in § 23C.

[4] The findings include these: The respondent had not supported the child's
mother; the Probate Court for Plymouth County on October 23, 1961, entered
a decree nisi on her libel for divorce with no order for custody of the child but
with an order of $15 a week for support of the libellant; support payments
were made as follows: 1959, $160; 1960, $420; 1961, $411; "[n]o support
payments whatever, for either . . . [the mother] or the child have been made
by . . . [the respondent] since September of 1961"; the child had been in a
foster home since September 1, 1959; the mother had executed a "written
adoption surrender" on May 8, 1961; the probate judge for Plymouth County,
on a custody petition filed by the respondent, September 16, 1959, had made
findings adverse to both parents ("neither . . . normal or suitable").